DECISION
The above-captioned consolidated cases are before the Court for decision following a bench trial concerning the proper method of valuation of mobile homes for tax assessment. *Page 2 
The property in question at Forest Park in Middletown contains 26 mobile homes which are owned and leased out by the Plaintiff John K. Irwin, Jr. (Plaintiff). Plaintiff contends that the Town of Middletown's tax assessor, William Shorey (Defendant), incorrectly assessed the mobile homes due to his utilization of the "comparable sales" approach to fair market value. Plaintiff, characterizing mobile homes as "tangible personal property," asserts that the proper method of valuation is the depreciated market value as calculated by the National Automobile Dealer's Association (NADA) Appraisal Guide.
The value of the property was assessed as follows: $370,500 for the tax year, July 1, 2002 to June 30, 2003; and $660,700 for the tax years; July 1, 2003 through July 1, 2004, and July 1 2004 through July 1, 2005.
Plaintiff's expert appraiser, Paul Hogan, testified that the proper method of valuation of the mobile home requires reference to the aforementioned NADA guide. (Ex. 7). Comparison of the figures contained in the guide assigned to the various mobile homes to the values assigned by the tax assessor reveals a dramatic increase in assessment.
Citing R.I. Gen. Laws § 44-5-11.8, which includes mobile homes on leased land within its definition of Class 1 residential real estate, Defendant maintains that the application of the comparable sales method was appropriate. Although he asserts in his post-trial memorandum that "[t]here are numerous indices in our statutes that indicate that a mobile or manufactured home is to be taxed as a dwelling on leased land," see Def.'s Mem. at 8-9, these additional indices remain unspecified. In support of his position, Defendant refers the Court to the holding by the Massachusetts Supreme *Page 3 
Judicial Court in Ellis v. Board of Assessors of Acushnet,265 N.E.2d 491 (Mass. 1970), which upheld an Appellate Tax Board's taxation of mobile as "any other conventional home which is classified as real estate under G.L.c. 59, § 3 and taxed pursuant to G.L.c. 59, § 59, 38." However, in Ellis, the owner of the mobile home also owned the real estate upon which the home was situated, resting on and attached to a ten-inch poured concrete foundation with a full cellar.
Unlike the statutory schemes of many states, Rhode Island's general laws regarding mobile or manufactured homes do not address with particularity what physical features or attributes of ownership convert a mobile home from personal property to real property for purposes of taxation. Kansas legislation, for example, provides that:
 "a mobile home or manufactured home, for purposes of taxation, shall be considered to be personal property, unless title to the mobile home is vested in the same person or the spouse of such person who holds title to the real property upon which such mobile home or manufactured home is located and such mobile home or manufactured home has a permanent foundation, such foundation being of a type not removable intact from such real property. Any mobile home or manufactured home used as a dwelling or residence shall be appraised for ad valorem tax purposes in the same manner as real property."
Kan. Stat. Ann. § 79-340 (2006).
Similarly, the state of Minnesota's pertinent statute provides that the "tax assessed on manufactured homes is a personal property tax." Minn. Stat. § 273.125(7). If, however, the "owner of the unit holds title to the land on which it is situated" and "the unit is affixed to the land by a permanent foundation . . . taxes are payable in the manner provided for real property. . . ." Id. at § 273.125(8)(b)(1) (2). *Page 4 
Florida has an identical statute which states that a "mobile home that is not taxed as real property shall have a current license plate properly affixed." Fla. Stat. § 193.075(2) (2007). The statute further provides that "[a]ny such mobile home without a current license plate properly affixed shall be presumed to be tangible personal property."Id.
Finally, the Court would reference an article published by the Tax Assessor's Office of Sacramento County, California entitled, "Valuation of Manufactured Homes (Not on a Permanent Foundation) For California Property Tax Purposes." The Court cites the article not for precedential value, but as an illustration of another state's valuation approach. Contained within the article are excerpts from a letter addressed to California tax assessors (Letter Number 93/35, dated July 7, 1993) from the State Board of Equalization. In response to the letter's information concerning certain mandatory regulations of California's tax code, the Sacramento Assessor determined that it would utilize "the following cost guides to arrive at a value conclusion: State Board of Equalization Assessor's Handbook § 531.35, NADA Mobile/Manufactured Housing Appraisal Guide, Marshall and Swift Residential Cost Handbook for Manufactured Housing."
The California tax code provides, in pertinent part, that:
 "because owners of manufactured homes subject to property taxation on rented or leased land do not own the land on which the manufactured home is located and are subject to having the manufactured home removed upon termination of tenancy, "full cash value" for purposes of subdivision (a) does not include any value attributable to the particular site where the manufactured home is located on rented or leased land which would make the sale price of the manufactured home at that location different from its price at some other location on rented or leased land. In *Page 5 
determining the `full cash value' of a manufactured home on rented or leased land, the assessor shall take into consideration, among other relevant factors, cost data issued pursuant to Section 401.5 or sales prices listed in recognized value guides for manufactured homes, including, but not limited to, the Kelley Blue Book Official Manufactured Housing Guide and the National Automobile Dealers Association's Manufactured Housing Appraisal Guide."
Cal. Rev. Tax Code § 5803(b) (2007).
A review of the various aforementioned legislative enactments regulating the classification and taxation of mobile homes compels this Court to conclude that the determinative factors are the ownership of the land upon which the manufactured/mobile home is located and the permanency of any foundation.
Mr. Irwin has testified that he has owned Forest Park since 1995, and that he presently owns 26 trailers within the property. According to his testimony, however, the trailers are not permanently affixed to the site in that they do not rest upon a foundation. Rather, the trailers have axles, are mobile and are merely "skirted" at the bottom to conceal various utility lines and equipment.
This Court, in its research, did not locate any legislation which specifically addressed the appropriate taxation method for mobile homes, without permanent foundations, owned by the owner of the land, and leased out by that owner for profit. Thus, the Court is of the opinion that because the trailers lack permanent foundations; and the trailers have inherent mobility, they should be categorized as "tangible personal property" and assessed with the utilization of the NADA Mobile/Manufactured Housing Appraisal Guide.
Counsel for the Plaintiff will prepare an order in conformance with this decision. *Page 1